OPINION *Page 2 
{¶ 1} Defendant-appellant Jerry Stegall appeals his May 19, 2008 conviction in the Mount Vernon Municipal Court, Knox County, Ohio on one count of OVI, failure to wear a seatbelt and failure to control. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was involved in a one-vehicle automobile accident in the late evening hours of September 21, 2007, or the early morning hours of September 22, 2007. Ohio State Highway Patrol Trooper Matthew Them arrived at the scene at 1:24 a.m. on September 22, 2007. Trooper Them found the vehicle abandoned, with substantial front end damage. He observed spots on the windshield where the occupants hit their head, and blood and beer bottles inside the vehicle.
 {¶ 3} An emergency medical technician informed Trooper Them he made contact with the occupants of the vehicle at a residence nearby. Trooper Them proceeded to the residence, and interviewed Appellant in the back of an ambulance. Trooper Them detected a strong odor of alcohol on Appellant's person. Appellant exhibited slurred speech, and glassy bloodshot eyes. Appellant later admitted to driving the vehicle, and stated the accident was caused by a deer. Appellant stated he had consumed a few beers during the day; signing a written statement he consumed 6-7 beers. Prior to Appellant's transport to the hospital, Trooper Them performed a HGN test, and observed all six clues.
 {¶ 4} Appellant was charged with operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a), failure to wear a seatbelt, in violation of R.C. 4513.26(B)(1) and failure to control, in violation of R.C. 4511.202. Following a jury *Page 3 
trial, Appellant was found guilty of the charges, and sentenced to a forty-five day jail sentence and financial sanctions.
 {¶ 5} Appellant now appeals, assigning as error:
 {¶ 6} "I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS.
 {¶ 7} "II. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION DUE TO FAILURE OF TRIAL COUNSEL TO VIEW THE STATE'S VIDEO EVIDENCE UNTIL THE DAY OF TRIAL.
 {¶ 8} "III. DEFENDANT-APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION WHEN TRIAL COUNSEL FAILED TO OBJECT TO AND MOVE TO STRIKE TRIAL TESTIMONY OF THOMAS NEWSOME REGARDING DEFENDANT-APPELLANT'S BLOOD TEST."
 I {¶ 9} In the first assignment of error, Appellant asserts the trial court erred in overruling his motion to suppress the results of the blood alcohol test. Specifically, Appellant maintains the State failed to establish the definitive time the accident occurred. Therefore, the State cannot prove the blood test was conducted within the statutorily required three hour time limit. *Page 4 
 {¶ 10} Appellant further argues the State did not introduce expert testimony relative to the administration of the blood test, and whether it was performed in substantial compliance with the Ohio Department of Health regulations. Therefore, the trial court erred in admitting the blood test into evidence.
 {¶ 11} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether the findings of fact are against the manifest weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 437 N.E.2d 583; State v. Klein (1991),73 Ohio App.3d 486, 597 N.E.2d 1141; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. See State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141, overruled on other grounds. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue that the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v.Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; andGuysinger, supra.
 {¶ 12} Ohio Revised Code Section 4511.19(D) reads:
 {¶ 13} "(D)(1)(a) In any criminal prosecution or juvenile court proceeding for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle related, *Page 5 
the result of any test of any blood or urine withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.
 {¶ 14} "(b) In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation.
 {¶ 15} "* * *
 {¶ 16} "The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code."
 {¶ 17} On January 25, 2008, via Journal Entry, the trial court overruled Appellant's motion to suppress, stating:
 {¶ 18} "Further, the Court finds that for purposes of proving a violation of R.C. 4511.19(A)(1)(a), that the blood tests are admissible. However, they are not admissible for the purpose of proving a violation of R.C. 4511.19(A) subsections (2), (3), (6) or (7). See State v.Hassler 115 Ohio St 3d 322, 2007 Ohio 4947 or 2007 LEXIS 2232." *Page 6 
 {¶ 19} In State v. Hassler (2007), 115 Ohio St.3d 322, the Ohio Supreme Court addressed the issue raised herein:
 {¶ 20} "For the foregoing reasons, we hold that a blood sample taken outside the time frame set out in R.C. 4511.19(D) is admissible to prove that a person is under the influence of alcohol as proscribed by R.C. 4511.19(A)(1)(a) in a prosecution for a violation of R.C. 2903.06, provided that the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered."
 {¶ 21} Appellant was charged with operating a motor vehicle while intoxicated in violation of R.C. 4511.19(A)(1)(a). Accordingly, the trial court property denied Appellant's motion to suppress the blood test results, providing the administrative requirements of R.C. 4511.19(D) are substantially complied with and expert testimony is offered.
 {¶ 22} However, the State did not introduce the blood test results in the presentation of its case-in-chief. Rather, during Appellant's case, defense witness Thomas Newsome testified on cross-examination:
 {¶ 23} "Q. Yeah. I'm kinda' the same way. I'm just wondering why your — you got a good recollection of what Mr. Stegall drank-
 {¶ 24} "A. Only that he drink, not to how much he drank. I, I know how many he drank on the golf course. When I was on the golf course, I was still sober at the time and I — but I didn't pay any attention to how many he drank or — all I know is he, he had had his last beer around 4 o'clock on the 12th or 13th hole when we left. And from my understanding, I never seen him drink another beer until that night when I seen him holding the glass of bourbon. *Page 7 
 {¶ 25} "Q. Mr. Newsome, in that answer I gotta' break that down. I thought you said when you first started that you don't know how much he had to drink that day.
 {¶ 26} "A. That I `didn't know' — I, I testified earlier that he had had three maybe four on the golf course.
 {¶ 27} "Q. Okay. Well what's, what's your testimony as to how many he drank that day?
 {¶ 28} "A. That day?
 {¶ 29} "Q. That day.
 {¶ 30} "A. I know he drank three or four beers on the golf course, and then I know that that night after the accident that I seen him holding a glass of bourbon. I can't tell you how many glasses of bourbon he drank or even if he drank that one, but he had it in his hands. And then I know that he had a test that came back at two point (2.) something, so he obviously was drinking something.
 {¶ 31} "Q. So you knew that the blood test came back at a point two, one, one (.211).
 {¶ 32} "A. Because the gentleman outside the — whoever it was that told me.
 {¶ 33} "Q. Okay. And you knew that a blood — you talked with him, so you know that a blood test was taken from him at the hospital, correct?
 {¶ 34} "A. I assumed it was, yeah.
 {¶ 35} "Q. And Mr. Newsome, you know from all of your extensive safety and drug and alcohol training that one shot of Crown Royal or even three shots of Crown Royal is not gonna take your blood alcohol to .211, don't you, sir? *Page 8 
 {¶ 36} "A. If I done the math, if one drink would put it at .08, and within a fifteen, twenty minute time, if you had two, that'd be .16, and three would be .24.
 {¶ 37} "Q. And that's again, based upon your belief that one beer takes you to the legal limit, or one drink of alcohol takes you to the legal limit.
 {¶ 38} "A. That's because the man that was in our seminar said that you could be legally under the influence after one drink."
 {¶ 39} Tr. at 76-77.
 {¶ 40} In response to Newsome's testimony, the State introduced the testimony of Trooper Them in rebuttal:
 {¶ 41} "Q. Now you also heard testimony from, from one of the Newsome brothers that Mr. Stegall's blood alcohol was a .211; is that correct?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. And what time was that blood sample drawn that was tested?
 {¶ 44} "A. At 2-
 {¶ 45} "Mr. Rakestraw: Your Honor, I object to any reference to the test. No foundation's been laid. We have nothing to know anything about the test, how it was taken or what it was except for the trooper's testimony. I'm relatively sure he didn't take the sample.
 {¶ 46} "Mr. Aebi: Your Honor, if I could be heard on that. Counsel's witness opened the door by blurting out, and I think purposefully, the blood alcohol and passing himself off as an expert on, on blood alcohol matter. I think that he opened the door and I'm entitled to present some limited testimony on that issue.
 {¶ 47} "The Court: Your objection is sustained. *Page 9 
 {¶ 48} "By Mr. Aebi:
 {¶ 49} "Q. Trooper Them, there was testimony by, I believe it was Thomas Newsome, that one drink or one alcoholic drink would raise an individual's blood alcohol by .08; is that correct?
 {¶ 50} "A. That is what was said. That's not correct.
 {¶ 51} "Q. What does — you've been trained on, on the effect of alcohol on a normal sized male, correct?
 {¶ 52} "A. Yes.
 {¶ 53} "Q. And if a person had a one shot or one beer, as that witness testified, what has your training told you about how much that would raise blood alcohol in a normal size man?
 {¶ 54} "A. By my experience and training with the National Highway Traffic Safety Manual, the average size person would be one serving of alcohol would be .02 BAC.
 {¶ 55} "Mr. Rakestraw: Your Honor, if Trooper Them — object to the question unless Tropper Them can tell us what a normal size man really is. I think I'm normal, but basically my doctor doesn't.
 {¶ 56} "The Court: Alright. I, I agree. Sustained.
 {¶ 57} "By Mr. Aebi:
 {¶ 58} "Q. Based upon your training and the NHTSA Manual, if a man weighs 175 pounds and drinks one alcoholic drink, be it a can of beer or a shot of whiskey, based upon your training, what would that raise his blood alcohol level to?
 {¶ 59} "A. According to the manual, a .02 BAC. *Page 10 
 {¶ 60} "Q. And you've had a chance to observe Mr. Stegall. Would you estimate his weight?
 {¶ 61} "A. According to his license, he's 180. I'd say he's probably in that range, 170 to 180."
 {¶ 62} Appellant did not object to Newsome's testimony. It was defendant's own witness who first mentioned the results of a test. We note Newsome's statement was not responsive to the question. Newsome's revelation of the test result and his purported expertise on rate of alchohol absorption opened the door to the testimony that followed. The trial court sustained Appellant's objection to Trooper Them's rebuttal testimony. Again, Appellant's own witness opened the door for the introduction of Trooper Them's rebuttal evidence, and we find the trial court properly limited consideration of the same at trial.
 {¶ 63} The first assignment of error is overruled.
 II., III. {¶ 64} Appellant's second and third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 65} Appellant argues he was denied the effective of assistance of counsel.
 {¶ 66} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and whether *Page 11 
counsel violated any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. at 141-142. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie, 81 Ohio St.3d 673, 675,1998-Ohio-343, 693 N.E.2d 267.
 {¶ 67} In the second assignment of error, Appellant asserts his trial counsel was ineffective for failing to view the State's video evidence prior to trial. Specifically, Appellant maintains his counsel was informed of the existence of a video tape of Trooper Them's investigation and interview conducted at the Newsome residence.
 {¶ 68} Assuming, arguendo, that counsel was ineffective for failing to view the videotape evidence prior to trial, we find Appellant has failed to establish there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different.
 {¶ 69} Upon review of the record, the tape was summarized in detail in the police report and accident investigation given to Appellant's counsel in discovery. Accordingly, any alleged error of Appellant's counsel for failing to view the tape prior to trial did not result in prejudice to Appellant. Appellant has failed to meet his burden under the second prong of Strickland; therefore, the assignment of error is overruled. *Page 12 
 {¶ 70} Appellant's third assignment of error asserts the ineffective assistance of trial counsel in failing to object and failing to move to strike the trial testimony of Thomas Newsome relative to Appellant's blood alcohol test.
 {¶ 71} We find defense counsel's failure to object was related to his trial strategy. Counsel attempted to utilize Newsome's testimony to establish Appellant's level of intoxication when first interviewed by Trooper Them, arguing the test result was indicative of the alcohol Appellant consumed after the accident, not earlier on the golf course. Based on Newsome's "expertise", Appellant's high test result could be attributable to consumption of three shots of bourbon after the accident. The fact the strategy proved unsuccessful does not equate to counsel being ineffective.
 {¶ 72} The second and third assignments of error are overruled.
 {¶ 73} Appellant's conviction in the Mount Vernon Municipal Court, Knox County,
Ohio is affirmed.
By: Hoffman, P.J.
Wise, J. and Edwards, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Opinion, the judgment of the Mount Vernon Municipal Court, Knox County, Ohio is affirmed. Costs assessed to Appellant. *Page 1